IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2013

## STATE OF TENNESSEE v. ARNES'A HART

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2082    Steve Dozier, Judge**

_____

**No.  M2012-00967-CCA-R3-CD - Filed April 3, 2013**

_____

Appellant, Arnes'a Hart, was indicted by the Davidson County Grand Jury for one count of felony murder, one count of aggravated child neglect, and one count of child neglect after the death of her infant son.  In exchange for pleas of guilty to criminally negligent homicide and child neglect, Appellant received sentences of six years and one year, respectively.  The sentences were ordered to be served concurrently.  The charge of aggravated child neglect was dismissed.  The plea agreement specified that the trial court would determine the manner of service of the sentence after a hearing.  After a sentencing hearing, the trial court denied alternative sentencing, ordering Appellant to serve her sentence in confinement in order to avoid depreciating the seriousness of the offense and due to Appellant's lack of truthfulness at the sentencing hearing.  Appellant appeals the denial of alternative sentencing.  After a review of the record and the applicable authorities, we conclude the record indicates that the trial court did not abuse its discretion in denying an alternative sentence where the proof showed that there was a need for deterrence of similar crimes, and Appellant was untruthful at the sentencing hearing.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Emma Rae Tennent, Assistant Public Defender, (on appeal), and Jerrilyn Manning, Assistant Public Defender, (at hearing), Nashville, Tennessee, for the appellant, Arnes'a Hart.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Appellant was indicted by the Davidson County Grand Jury in July of 2011 with one count of felony murder, one count of aggravated child neglect, and one count of child neglect after the death of her infant son.

Appellant pled guilty to one count of criminally negligent homicide and one count of child neglect. The aggravated child neglect charge was dismissed. The plea agreement called for Appellant to receive a six-year sentence for criminally negligent homicide and a one-year sentence for child neglect, to be served concurrently. The trial court was to determine the manner of service of the sentence at a sentencing hearing.

At the plea hearing, the prosecutor offered the following as the factual basis for the guilty plea:

[Appellant] was employed at the Comfort Inn at 2516 Music Valley Drive as a front desk clerk. On February 20, 2011, [Appellant] did not have child care for her children. She took both of her children, the victim, Sir Rodrick Polk-Donelson, [whose] date of birth was 9-28-10, and her [son] Sir Amore Hart,[1] date of birth 1-23-08, to the hotel with her.

[Appellant] originally left the children [in] the car for a period of about 30 minutes then brought them into a hotel room and left them without any adult supervision other than her visiting the hotel room, according to the card key, one time during the eight hour shift that she worked there.

Sometime[ ] toward the end of that shift, [Appellant] returned to that hotel room, found her three-year-old son lying across the baby. The baby was dead. The results of that death were determined to occur from overlaying by the three-year-old chid.

During the course of the investigation, [Appellant] admitted that she had done this in terms of leaving the children and bringing the children to work on prior occasions. She did not have the child - baby in a crib although

---

[1] The spelling of the names of the children are not consistent in the record. We have chosen to utilize the spelling in the indictment.

a crib was available at the hotel. [Appellant] provided information to the police indicating that she had provided a lunchable and a juice box for the three-year-old child, however, there was no physical evidence to corroborate that in terms of any waste products from that.

At the sentencing hearing, the State introduced Appellant's presentence report. Appellant had no prior criminal history and, at the time of the hearing, had been incarcerated for six months. During that time, Appellant had taken several courses involving anger management, parenting, and critical thinking. Appellant also took several computer certification courses during that time. Appellant was a high school graduate and, by the time of the hearing, had another child. Appellant denied alcohol and drug use.

Appellant moved to Nashville from Florida in 2009 to find a better life. Her sister moved to Nashville just before the sentencing hearing. At the time of the hearing, her youngest child was being cared for by a family in the Nashville area. This family was at the sentencing hearing. Her oldest child had spent some time with her sister in Maine and was living in Florida at the time of the hearing.

At the sentencing hearing, Detective Jacob Pilarski[2] testified that he was in charge of the investigation surrounding the victim's death. Appellant confirmed that she had taken her children to work with her on prior occasions and usually utilized a hotel room closest to the front desk.

On the day of the child's death, the room she used was about a ten to fifteen second walk from the front desk. Based on the investigation, it was discovered that Appellant used a card key to enter the room where she left her children one time during her eight-hour shift. All eight hours of video surveillance tape were reviewed and the tape showed Appellant entering the room one time and stopping near the room on one other occasion. There were periods of time on the tape where Appellant had "hours" of "downtime" with no customers at all. She did not check on her children during these times.

Detective Pilarski testified that he investigated all child deaths in Nashville. According to his past investigations, the majority of child deaths result from unsafe sleep environments. Detective Pilarski estimated that he investigated twelve to twenty-four of these cases each year in Nashville alone. Detective Pilarski explained that in the majority of

---

[2] The detective's name is spelled "Pullarski" in the transcript. We will refer to the detective as "Pilarski, " as we believe this to be the proper spelling of his name.

the cases no criminal charges were filed.  In cases where charges were filed, it was usually the result of one parent using alcohol or drugs which created an unsafe environment.

Detective Pilarski testified that the issue of unsafe sleep environment is a significant issue in Nashville.  He explained that the Child Death Review Team had made public service announcements and provided information to the public about unsafe sleep environments to new mothers in an effort to prevent or reduce these type of child deaths.

Appellant testified at the hearing.  She expressed remorse over taking her children to work with her and asked the trial court to grant her a sentence of probation to enable her to take parenting and grief classes.  Appellant stated that, as a result of her own actions, she "suffered a great loss."  Appellant recognized that there were "consequences" to her actions and had learned that she should have taken her children to a proper place.

Appellant claimed that on the day of the incident, she took her children to work because she was worried she would get laid off if she missed more work.  She admitted that she left her children, unattended, in the car for about thirty to forty-five minutes before she put them in the hotel room.  The car was unlocked and the windows were cracked.  She did not check on them while they were in the car, but she could see them from the front desk.

On prior occasions when Appellant brought her children with her, she had notified other hotel personnel of their whereabouts.  This time she did not "have a chance" because it was a "very busy weekend."  Appellant denied leaving her children in the car to try to conceal their presence.

Appellant claimed she was unaware that the hotel had cribs available.  In fact, she insisted that she had asked the management if the hotel supplied cribs and "they always told [her] no."  At home, Appellant stated that she always placed her children in a crib because they needed a safe sleeping environment.

Appellant admitted that she only checked on the children once during the eight-hour shift and claimed it was because the hotel was "busy."  She went to the room "as much as [she] possibly could" but agreed that there were hours of time on the surveillance tape during which she could have checked on her children.

Maryann Heath, a licensed clinical social worker with the Public Defender's Office, testified that she met with Appellant on "numerous" occasions prior to the sentencing hearing.  According to Ms. Heath, Appellant was "extremely" remorseful and needed trauma and grief counseling.  Ms. Heath had "lined up" these services as well as "alternative housing" for Appellant if she received probation.

Appellant's sister, Kamia Duckworth, testified at the hearing that she moved to Nashville to help Appellant.

At the conclusion of the first day of the hearing, the trial court expressed concern over the discrepancy in the testimony about cribs being available at the hotel. The trial court was concerned that Appellant was lying to the court. The State offered to call a hotel employee to testify about availability of cribs at a later date.

At a second hearing, Darrell John Pike, II, the manager of the Comfort Inn, testified that the hotel had portable cribs available at the time of the incident. In fact, the "national flag" or chain of Choice Hotels, of which the Comfort Inn was a part, required the hotel to provide portable cribs. "All employees" receive training on the availability of portable cribs for guests at the "very beginning" of their employment. During the training, which lasts three to four days, the employees do a walk through of the hotel to show "where the storage areas are" located where the portable cribs are kept. Mr. Pike did not recall telling Appellant that she could be fired if she continued to miss work due to child care issues. Appellant's personnel file indicated that she missed one day of work prior to the accident due to a "bad tire."

At the conclusion of the hearing, the trial court noted Appellant's lack of criminal history and that punishment should be imposed to provide "an effective deterrent for those likely to violate criminal laws." The trial court noted the "general deterrence language" contained in Detective Pilarski's testimony. The trial court determined that confinement was appropriate because of the "testimony and the facts of the case" as well as to avoid depreciating the seriousness of the offense. The trial court also placed great weight on the fact that Appellant was not "honest" with the trial court. The trial court denied an alternative sentence.

Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant challenges the trial court's denial of an alternative sentence. Specifically, Appellant argues that the trial court erred in imposing a sentence of total confinement because she was a favorable candidate for probation and "alternative sentencing would subserve the ends of justice and the best interests of both the public and [Appellant]." Further, Appellant argues that confinement was not necessary to avoid depreciating the seriousness of the offense or to provide a deterrent to others likely to commit similar offenses and that no other provisions of Tennessee Code Annotation section 40-35-103 apply to her situation. Lastly, Appellant insists that the trial court improperly based its decision on

-5-

Appellant's lack of candor and credibility. The State insists that the trial court did not abuse its discretion in denying an alternative sentence.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. This standard of review is also applicable to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Thus, in reviewing a trial court's denial of an alternative sentence, the applicable standard of review is abuse of discretion with a presumption of reasonableness so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." *Id.* The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

> A defendant who does not fall within this class of offenders:

> [A]nd who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary . . . . A court shall consider, but is not bound by, this advisory sentencing guideline.

T.C.A. § 40-35-102(6); *see also Carter*, 254 S.W.3d at 347. For offenses committed on or after June 7, 2005, a defendant is eligible for probation if the sentence actually imposed is ten years or less. *See* T.C.A. § 40-35-303(a). Appellant herein was eligible for probation because her sentence was ten years or less, and the offenses for which she was convicted were not specifically excluded by statute. T.C.A. § 40-35-303(a).

All offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *see also State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

Any sentence that does not involve complete confinement is an alternative sentence. *See generally State v. Fields*, 40 S.W.3d 435 (Tenn. 2001). The principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence [.]" Id. § 40-35-103(5).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. *Id.* § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." *Id.* § 40-35-303(b), *Sentencing Comm'n Cmts.* Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. *See State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)).

In the case herein, the trial court based its decision to deny alternative sentencing in order to avoid depreciating the seriousness of the offense, to provide a deterrent to others, and due to Appellant's lack of candor. Although Appellant had no previous criminal history, the record reflects that she left her three-year-old and five-month-old children unattended in a hotel room during her eight-hour work shift. The surveillance video indicated that Appellant visited the room only one time during the eight-hour shift despite several hour-long blocks of time during which Appellant was not otherwise occupied and could have easily walked the ten to fifteen seconds from the front desk to the hotel room to tend to her children. Further, Appellant claimed that there were no cribs available at the hotel, but the manager testified that not only were cribs available but that all employees received training on both the availability and location of cribs in the hotel. The trial court gave Appellant an opportunity to retract her denial, and she declined. The trial court assessed Appellant's credibility and determined that she was untruthful. Further, the testimony of Detective Pilarski indicated that the Child Death Squad investigated multiple cases of child deaths each year in Davidson County that, like the case herein, resulted from unsafe sleep environments. The detective opined that there was a need for education and deterrence in the community.

We agree with the trial court that the victim's death was needless and entirely caused by Appellant's irresponsibility. While we do not dispute the pain and anguish felt by

-8-

Appellant due to the death of her infant son as a result of her own actions, Appellant has not established that the trial court abused its discretion by denying an alternative sentence. Appellant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE